UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DESEAN GILDYARD,

     Plaintiff,

v.                               Case No.:  2:24-cv-702-SPC-KCD

CHILDREN'S NETWORK OF
SOUTHWEST FLORIDA, LLC,

     Defendant.

_____/

# ORDER

     Before the Court are Defendant Children's Network of Southwest Florida, LLC's Motion to Dismiss (Doc. 23) and Plaintiff DeSean Gildyard's Response (Doc. 30).  For the reasons below, the Court grants the motion in part.

     This is an employment discrimination case.  Plaintiff alleges the following in his first amended complaint.[1]  Plaintiff is a licensed Mental Health Counselor with a bachelor's degree in criminal justice and a master's degree in counseling and psychology.  (Doc. 9 ¶ 24).  He is a 47-year-old, black, African American male.  (*Id*. ¶ 23).  Defendant is an agency that helps administer Florida's child welfare system.  (*Id*. ¶ 21).  In September 2019, Defendant hired

---

[1] The Court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to" Plaintiff.  *Belanger v. Salvation Army*, 556 F.3d 1153, 1155 (11th Cir. 2009).

Plaintiff as a Substance Abuse Specialist.  (*Id*. ¶ 23).  He was the only employee with a Master's Certified Addiction Professional ("MCAP") license.  (*Id*. ¶ 28). Despite his credentials, he asserts that Defendant discriminated against him based on his age, race, and color.  (*Id*. ¶ 29).  As evidence of this discrimination, he points to a conflict he had with another employee, the use of a racial slur, pay, promotion, and benefits discrepancies with other employees, and his termination.  (*Id*. ¶¶ 31–95).  Because of this discrimination, he had to take medical leave.  (*Id*. ¶ 71).  Even so, during his medical leave, Plaintiff was not fully compensated, continued to receive work emails and referrals, and was demoted.  (*Id*. ¶¶ 72–82).  And in August 2024, Defendant fired Plaintiff for allegedly violating the terms of his employment.  (*Id*. ¶ 83–84).  It did so without providing prior notice of any violation or an opportunity to respond. (*Id*. ¶ 85).

Plaintiff now sues under various legal theories.  In Counts I through IV, he claims discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) and the Florida Civil Rights Act ("FCRA"), Florida Statute § 760.10.  (*Id*. ¶¶ 96–126).  In Count V, he claims age discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et seq*. and 28 U.S.C. § 1343(4).  (*Id*. ¶¶ 127–32). In Counts VI and VII, he claims that Defendants deprived him of procedural due process as guaranteed by both the federal and state constitutions.  (*Id*.

2

¶¶ 133–46).  In Count VIII, he claims retaliation under the Civil Rights Act of 1866, 42 U.S.C. § 1981.  (*Id*. ¶¶ 147–53).  In Count IX, he claims retaliation under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*.  (*Id*. ¶¶ 154–58).  Finally, in Counts X through XII, he brings state-law claims of negligence, negligent retention, and intentional infliction of emotional distress ("IIED").  (*Id*. ¶¶ 159–76).  Defendant moves to dismiss.  (Doc. 23).

## Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  If a court can draw reasonable inferences of a defendant's liability from the facts pled, then the claim is "facially plausible."  *Iqbal*, 556 U.S. at 678.  But "labels and conclusions, and a formulaic recitation of the elements of a cause of action" are simply not enough.  *Twombly*, 550 U.S. at 555.

## Analysis

Before turning to the claim-specific arguments, the Court must address an issue with the first amended complaint as a whole—it violates Federal Rule of Civil Procedure 8.  Rule 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Shotgun pleadings violate Rule 8 because "they fail . . . to give

3

the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Off.,* 792 F.3d 1313, 1323 (11th Cir. 2015).

Under each count of his amended complaint, Plaintiff "repeats and realleges paragraphs 1 through 95 as if fully set forth herein." (Doc. 9 ¶¶ 96, 104, 110, 117, 127, 133, 140, 147 154, 159, 164, 170). This is insufficient. He must cite the specific facts that are relevant to each separate claim. Plaintiff resists this argument, asserting that he provides the relevant facts under each count's heading. (Doc. 30 at 6–7). But the assertions under each count are largely conclusory or vague. For example, under Count I, he asserts that he was "subjected to disparate treatment based on his race" and that Defendant "treated similarly situated white employees with more favor." (Doc. 9 ¶¶ 99, 101). Similarly, under Count II, he asserts that he "complained regarding the [disparate] treatment," and "Defendant retaliated against him by terminating" him. (*Id.* ¶¶ 106–07). But Plaintiff does not point to what conduct by Defendant amounted to disparate treatment, which employees were treated with more favor, or when or to whom he complained about the disparate treatment. These threadbare allegations do not provide Defendant with adequate notice of the grounds upon which each claim rests. The rest of the amended complaint proceeds in the same way. Thus, the Court dismisses the amended complaint on Rule 8 grounds.

4

The Court now turns to the claim-specific arguments.  Defendant groups its arguments against the (1) discrimination claims, (2) retaliation claims, (3) procedural due process claims, and (4) state-law claims.

First, Defendants argue the Court should dismiss Plaintiff's discrimination claims under Title VII, the FCRA, and the ADEA because he failed to exhaust administrative remedies timely and fails to state a discrimination claim.  (Doc. 23 at 5–23).  "The FCRA, Title VII, and the ADEA require plaintiffs to exhaust administrative remedies by filing a Charge with the appropriate administrative agency prior to filing suit." *Zorn v. McNeil*, No. 6:16-CV-1-ORL-41TBS, 2016 WL 5476195, at *3 (M.D. Fla. Sept. 29, 2016).  For Title VII and the ADEA, "only those claims arising within 300 days prior to the filing of the EEOC's discrimination charge are actionable." *E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1271 (11th Cir. 2002). For the FCRA, the time period is 365 days.  *See Rainey v. United Parcel Serv., Inc.*, 816 F. App'x 397, 401 (11th Cir. 2020).  As for a hostile work environment claim, a plaintiff may recover "for acts that occurred outside the statutory limitations period, as long as at least one act contributing to the hostile work environment took place within the limitations period." *Abram v. Fulton Cnty. Gov't*, 598 F. App'x 672, 675 (11th Cir. 2015) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)).  But discrete discriminatory acts, such as termination or

5

failure to promote, "are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Morgan*, 536 U.S. at 113.

Along with timing, the content of the EEOC charge is also important. "The purpose of this exhaustion requirement is that the EEOC should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts." *Litman v. Sec'y, of the Navy*, 703 F. App'x 766, 771 (11th Cir. 2017) (quoting *Gregory v. Georgia Dep't of Hum. Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004)). So claims "are allowed if they amplify, clarify, or more clearly focus the allegations in the EEOC complaint," but "allegations of new acts of discrimination are inappropriate." *Batson v. Salvation Army*, 897 F.3d 1320, 1327 (11th Cir. 2018) (quoting *Gregory*, 355 F.3d at 1279–80).

Plaintiff filed two charges with the EEOC, but only references his amended charge in his amended complaint.[2]  Defendant argues he failed to include in his EEOC charges his color discrimination claim, discriminatory termination claim, one of his failure to promote claims, and his race-based hostile work environment claim. (Doc. 23 at 5–14). Defendant also argues his

---

[2]Plaintiff attaches his May 7, 2024, amended EEOC charge to his amended complaint. (Doc. 9-1). Defendant asserts that Plaintiff filed an initial charge on March 26, 2024. (Doc. 23 at 8). Defendant inadvertently failed to provide the initial charge as an exhibit. (*Id.*).

failure to promote claims and hostile work environment claims are untimely. (*Id*.).

Plaintiff agrees that he did not include his color discrimination claim in an EEOC charge. (Doc. 30 at 14); *see also Bell v. Hobby Lobby Stores, Inc*., No. 8:21-CV-2455-WFJ-AAS, 2023 WL 1102647, at *4 (M.D. Fla. Jan. 30, 2023) (explaining in its exhaustion analysis that "[a] claim of color discrimination is not synonymous with a claim for race discrimination"). So the Court dismisses Counts I and III to the extent that Plaintiff alleges color discrimination.

Plaintiff argues he has exhausted his administrative remedies for his discriminatory termination claim, however. (Doc. 30 at 10–12). His amended EEOC charge naturally did not mention his termination, as he was fired months later. (Doc. 9 ¶ 83). Instead, he asserted in his amended charge that Defendant discriminated against him by promoting his white coworker, Chris Rossi, without giving him a chance to apply for the position. (Doc. 9-1 at 1). He also states that one of his supervisors never gave him a performance evaluation and that he was not reimbursed for certain work expenses or invited to paid conferences or trainings. (*Id*. at 2). He asserts that Rossi orally abused him and that human resources "did nothing." (*Id*.). He concludes by stating that there is "current talk around the office" that his supervisor, a white female, will soon receive a promotion and that his job title was recently changed. (*Id*.).

7

Nonetheless, Plaintiff asserts that his EEOC charge "reasonably encompasses the subsequent termination as part of the same continuing course of conduct." (Doc. 30 at 12). The Court disagrees. Plaintiff's termination was a discrete act "that occur[ed] after the filing of an EEOC complaint" and so "must first be administratively reviewed before [it] may serve as a basis for a judicial finding of discriminatory conduct[.]" *Kelly v. Dun & Bradstreet, Inc.*, 557 F. App'x 896, 899 (11th Cir. 2014); *see also Basel v. Sec'y of Def.*, 507 F. App'x 873, 876 (11th Cir. 2013) ("Discrete acts of discrimination that occur after an administrative filing must first be administratively reviewed before a plaintiff may obtain judicial review of those same acts. Readily identifiable acts, such as termination, are discrete employment actions."); *but see Duble v. FedEx Ground Package Sys., Inc.*, 572 F. App'x 889, 892 (11th Cir. 2014) (finding exhaustion is not required for a "claim of *retaliation* if that claim grew 'out of an earlier charge,' because the 'the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court.'") (emphasis added and citation omitted). The Court dismisses Counts I, III, and V to the extent that Plaintiff alleges discriminatory termination.

Similarly, his EEOC charge failed to mention the promotion of Kristianna Kerr. (Doc. 9-1; Doc. 23 at 8 n. 2). Yet he seems to rely on Kerr's promotion to support a discrimination claim. (*See* Doc. 9 ¶¶ 43–45). Because

8

Kerr's promotion was a discrete act of discrimination and was not included in his EEOC charge, Plaintiff has failed to exhaust administrative remedies for this discrimination claim. *See Haugabrook v. Cason*, 518 F. App'x 803, 809 (11th Cir. 2013) (affirming dismissal on exhaustion grounds when a plaintiff alleged two incidents where she was not promoted or hired in her EEOC charge but failed to mention a third, non-exhausted incident); *Bennett v. Chatham Cnty. Sheriff Dep't*, 315 F. App'x 152, 161 (11th Cir. 2008) (rejecting the argument that claims based on a subsequent failure to promote or hire grew out of a previous EEOC charge); *Smith v. City of Atl. Beach*, No. 3:18-CV-1459-J-34MCR, 2020 WL 708145, at *9 (M.D. Fla. Feb. 12, 2020) (same). The Court dismisses Counts I, III, and V to the extent that Plaintiff relies on the promotion of Kerr.

Plaintiff's amended EEOC charge also failed to exhaust his race-based hostile work environment claim. Plaintiff's charge almost entirely focuses on the promotion of other employees allegedly due to his age and race. (Doc. 9-1). These allegations do not exhaust his hostile work environment claim. *Cotton v. G.S. Dev.*, 390 F. App'x 875, 877 (11th Cir. 2010) (affirming because the plaintiff "failed to mention his hostile work environment claim and only discussed his failure to promote and wrongful demotion and termination claims" in his EEOC charge); *Bonner v. Sarasota Cnty. Sch. Bd.*, No. 8:19-CV-2740-T-33AEP, 2020 WL 495169, at *3 (M.D. Fla. Jan. 30, 2020) ("Because the

hostile work environment theory does not depend on tangible employment actions, a promotion denial does not form the basis of a sexual harassment claim premised on hostile work environment.").

Only one short section of his charge addresses "workplace hostility." (Doc. 9-1 at 2). But that section says nothing about race. Rather, he states that Rossi "called [him] lazy, a piece of shit and an old man." (*Id*.). This reference to a comment about Plaintiff's age—not race—did not exhaust Plaintiff's race-based hostile work environment claims. *Litman*, 703 F. App'x at 771–72 (finding a plaintiff's "failure to mention his hostile work environment claim and the corresponding factual allegations would otherwise preclude the EEOC from performing its role in obtaining voluntary compliance and promoting conciliation efforts on that claim"); *Ramon v. AT & T Broadband*, 195 F. App'x 860, 866 (11th Cir. 2006) (affirming because the plaintiff "pointed to no allegation in her EEOC charge that reasonably points to the kind of pervasive and oppressive conditions that would allow us to conclude that she intended to have the EEOC investigate the workplace for a hostile work environment"). The Court dismisses Counts I and III to the extent that Plaintiff brings a hostile work environment claim.

As for timeliness, Plaintiff filed his EEOC charge and amended charge on March 26 and May 7, 2024. (Doc. 9-1; Doc. 23 at 8 n. 1). Even using the earlier charge as the starting point, claims arising before May 31, 2023, are

not actionable under Title VII and ADEA, and claims arising before March 27, 2023, are not actionable under the FCRA. *See Joe's Stone Crabs*, 296 F.3d at 1271 (300 days for Title VII and the ADEA); *Rainey*, 816 F. App'x at 401 (365 days for the FCRA). Plaintiff cites the promotion of Chris Rossi in his EEOC charge and seems to rely on this promotion to support a discrimination claim. (*See* Doc. 9 ¶¶ 46–54; Doc. 9-1). But Defendant promoted Rossi on July 20, 2022—615 days before Plaintiff's first EEOC charge. (Doc. 9 ¶ 46). So he failed to *timely* exhaust his administrative remedies for this discrimination claim. *See Butler v. TZ Ins. Sols., LLC*, No. 2:24-CV-807-SPC-NPM, 2024 WL 4825795, at *4 (M.D. Fla. Nov. 19, 2024) (finding that discriminatory actions that occurred before the limitation period are not actionable but may be admissible as background evidence). The Court dismisses Counts I, III, and V to the extent that Plaintiff relies on the promotion of Rossi.

Defendant also argues that Plaintiff's claim is time barred to the extent that he brings a race-based hostile work environment claim. This claim is timely "so long as an act contributing to that hostile environment takes place within the statutory time period." *Morgan*, 536 U.S. at 105. Defendant argues that Plaintiff does not allege a single incident supporting his hostile work environment claim that occurred during the statutory period. (Doc. 23 at 12–13). According to Defendant, the only race-based allegation to support his hostile work environment claim is an undated allegation in his amended

complaint that an unnamed supervisor called him the n-word. Because this allegation is undated, the Court cannot determine whether it occurred in the statutory period. Plaintiff's response could have pointed to a single event within the statutory period to defeat this argument. It does not. Even after Defendant explicitly highlighted the n-word incident, Plaintiff still does not provide when it occurred. In fact, Plaintiff seems to ignore the timeliness argument all together. (Doc. 30 at 13–14). Because Plaintiff fails to allege a single act contributing to the allegedly hostile environment that took place within the statutory period, the Court dismisses that claim in Counts I and III.

Aside from administrative exhaustion, Defendant also argues Plaintiff fails to state a discrimination claim. (Doc. 23 at 15–23). Defendant first challenges his compensation discrimination claim. To claim discrimination this way, Plaintiff must allege (1) he is a member of a protected class, (2) he received low wages, (3) similarly situated comparators outside the protected class received higher compensation, and (4) he was qualified to receive the higher wage. *See Short v. Immokalee Water & Sewer Dist.*, 165 F. Supp. 3d 1129, 1147 (M.D. Fla. 2016); *see also Valdes v. Kendall Healthcare Grp., Ltd.*, No. 23-12983, 2024 WL 3356965, at *1 (11th Cir. July 10, 2024) ("[D]iscrimination claims under the ADEA and Florida's FCRA statute are analyzed under the same framework as claims brought under Title VII."). To support these elements, Plaintiff alleges: (1) he is a 47-year-old, black African

American; (2) he received only one raise that was "minimal"; (3) a younger, white employee (Rossi) received higher compensation and another younger, white employee (Kerr) made only slightly less at a lower position; and (4) he has a master's degree, MCAP license, and performed his job well.  (Doc. 9 ¶¶ 23–28, 42–62, 69).

Defendant argues that these allegations are not enough to state a claim for age discrimination because Plaintiff does not allege the age of his coworkers, Kerr and Rossi.  The Court agrees.  *See Wineberger v. Racetrac Petroleum, Inc.*, No. 5:14-CV-653-OC-30PRL, 2015 WL 225760, at *5 (M.D. Fla. Jan. 16, 2015) ("However, Plaintiff does not provide the age of coworker . . . i.e., whether she was under the age of forty, such that the Court can determine whether Plaintiff was replaced with an individual outside the protected class.").  Thus, the Court dismisses Count V.

Defendant also argues that Plaintiff fails to state a compensation discrimination claim (for both age and race) because Kerr and Rossi are not similarly situated comparators.  Defendant argues that Kerr and Rossi held different positions than Plaintiff.  (Doc. 23 at 18).  This argument misses the mark.  Plaintiff need not allege that his comparators "had precisely the same title" as him.  *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1227 (11th Cir. 2019).  Defendant's argument sheds light on a similar issue, however— aside from job titles, Plaintiff alleges essentially nothing about his

comparator's job functions. Plaintiff's allegations fail to provide the Court with enough facts to determine whether they were "similarly situated in all material respects." *Lewis*, 918 F.3d at 1218. To the extent that Plaintiff relies on comparators to plead a discrimination claim, she must provide more. *See Aquino v. Mobis Alabama, LLC*, 739 F. Supp. 3d 1152, 1197 (N.D. Ga. 2024) (finding factual allegations about comparators insufficient but acknowledging that a plaintiff can sufficiently state a discrimination claim without reference to a comparator). The Court dismisses Counts I, III, and V to the extent that Plaintiff relies on comparators to state a discrimination claim.

Defendant next challenges Plaintiff's reliance on various miscellaneous actions taken during his employment—that he was not invited to a professional event, not given a performance evaluation, and not given a reimbursement. (Doc. 23 at 19–20). Under Title VII, the ADEA, and the FRCA, Plaintiff must allege, among other elements, that he was "subjected to an adverse employment action." *Mars v. Urb. Tr. Bank*, No. 2:14-CV-54-FTM-29CM, 2014 WL 2155243, at *2 (M.D. Fla. May 22, 2014). To qualify, "an employer's action that falls short of an ultimate employment decision, 'must, in some substantial way, alter the employee's compensation, terms, conditions, or privileges of employment, deprive him or her of employment opportunities, or adversely affect his or her status as an employee.'" *Hall v. Dekalb Cnty. Gov't*, 503 F. App'x 781, 787 (11th Cir. 2013) (quoting *Crawford v. Carroll*, 529

14

F.3d 961, 970 (11th Cir. 2008)).  The action must cause a "*serious* and *material*" change in the terms, conditions, or privileges of employment.  *Id.* (emphasis in original).

Plaintiff alleges he "was not invited to the Department of Children and Families Summit in Orlando[.]"  (Doc. 9 ¶ 63).  He does not provide any details about this event.  But to the extent this event would have offered professional training to Plaintiff, "[a] denial of training that does not result in the loss of some tangible job benefit does not constitute an adverse action."  *Rossi v. Fulton Cnty., Ga.*, No. 1:10-CV-4254-RWS-AJB, 2013 WL 1213205, at *13 (N.D. Ga. Feb. 8, 2013), *report and recommendation adopted*, 2013 WL 1213139 (Mar. 22, 2013).

Plaintiff also claims that one of his supervisors never gave him a performance evaluation.  (Doc. 9 ¶ 67).  But even a negative performance evaluation generally does not amount to an adverse employment action.  *See Davis v. Town of Lake Park*, 245 F.3d 1232, 1241 (11th Cir. 2001) ("[C]ourts are wisely reluctant to treat job performance memoranda as actionable under Title VII where they do not trigger any more tangible form of adverse action such as a loss in benefits, ineligibility for promotional opportunities, or more formal discipline."); *see also Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1234 (11th Cir. 2006) (finding failure to conduct 30-day evaluation failed to rise to the level of an adverse employment action).  And,

15

given Plaintiff's allegation that his performance evaluations "have never been linked with his merit salary increases," depriving him of such an evaluation could not have seriously and materially altered the terms, conditions, or privileges of his employment. (Doc. 9 ¶ 68).

For his last miscellaneous employment action, Plaintiff alleges that he did not receive a $200 reimbursement related to maintaining his license. (*Id.* ¶¶ 64–65). As Defendant points out, this claim is undated, so whether it is timely is unclear. Putting that aside, "not every monetary harm that may occur in the workplace automatically qualifies as an adverse employment action." *Warner v. Vance-Cooks*, 956 F. Supp. 2d 129, 163 (D.D.C. 2013). And the reimbursement here appears to be too trivial to amount to an adverse employment action. *See Endemano v. Sec'y, Dep't of Homeland Sec.*, No. 6:13-CV-348-ORL-36, 2014 WL 1092279, at *10 (M.D. Fla. Mar. 19, 2014) (collecting cases involving $150 reimbursements). Finally, each of these miscellaneous employment actions includes, at most, a conclusory and insufficient allegation that "similarly situated younger, white co-workers" received these benefits. (Doc. 9 ¶¶ 63, 65, 69). The Court dismisses Counts I, III, and V to the extent that Plaintiff relies on these miscellaneous employment actions to state a discrimination claim.

Defendant's final argument on the discrimination claims is that Plaintiff fails to sufficiently allege a hostile work environment. (Doc. 23 at 21–23). For

age discrimination, Defendant asserts that Plaintiff has not alleged a single instance of harassing conduct based on age. The Court agrees. Plaintiff's amended EEOC charge alleged that his co-worker Rossi called him "lazy, a piece of shit and an old man." (Doc. 9-1 at 2). He appears to refer to this incident in his amended complaint. (Doc. 9 ¶¶ 32–38). But he confusingly omits the "old man" comment, alleging only that Rossi called him "bro," "lazy," a "piece of shit," a "pussy," and a "fucking waste." (*Id.* ¶ 32). This leaves a confrontation between Plaintiff and Rossi that has nothing to do with age. Besides, even considering this exchange, "isolated incidents (unless extremely serious) will not amount to" a hostile work environment claim. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). The Court dismisses Count V to the extent that Plaintiff brings a hostile work environment claim.

For race discrimination, whether Plaintiff has sufficiently alleged a hostile work environment is a much closer question. The only allegation of harassing conduct based on age is the anonymous, undated n-word incident. (Doc. 9 ¶ 39). Because Plaintiff failed to exhaust this claim, the Court need not decide whether this allegation is sufficient. But the Court has its doubts. *See Patterson v. City of Cape Coral*, No. 2:22-CV-331-SPC-NPM, 2024 WL 1328445, at \*4 (M.D. Fla. Mar. 28, 2024) (finding the single use of the n-word insufficient given the surrounding facts and context).

17

Second, the Court considers the retaliation claims under Title VII, Section 1981, the FCRA, and the FMLA (Counts II, IV, VIII, and IX). Defendant argues the Court should dismiss the retaliation claims because Plaintiff has not sufficiently alleged that Defendant retaliated against him because of protected conduct. Defendant also argues dismissal is warranted because Plaintiff's allegations are undated and thus cannot plausibly allege causation.

As to protected conduct, Defendant argues Plaintiff fails to "allege that he complained of discriminatory treatment due to his age, race, or color." (Doc. 23 at 23–25). The Court disagrees—Plaintiff alleges that he "reported to other supervisors" the n-word incident. (Doc. 9 ¶ 39). All the same, because Plaintiff does not provide the date on which this incident and report occurred, or any other link between this report and his termination, he fails to allege Defendant terminated him because of this protected conduct.[3] *See McGuire v. United Parcel Serv., Inc.*, No. 815CV2792T24JSS, 2016 WL 3428499, at *3 (M.D. Fla. June 22, 2016) ("Plaintiff fails to provide dates to support this claim, and without a connection between his application for workers' compensation benefits and the alleged adverse employment actions of no work or less than

---

[3] Although Plaintiff provides very little factual information under each count, he does make clear that his termination (sometimes confusingly referred to as a constructive discharge) is the adverse employment action animating his retaliation claims under Title VII, Section 1981, and the FCRA. (*See* Doc. 9 ¶¶ 107, 122, 149–50).

full-time work, his workers' compensation retaliation claim fails and must be dismissed."). Similarly, Plaintiff fails to provide dates related to his FMLA leave to support that retaliation claim. The Court dismisses Counts II, IV, VIII, and IX.

Third, Defendant challenges Plaintiff's procedural due process claims (Counts VI and VII). In general terms, procedural due process guarantees "an individual is afforded adequate safeguards before he is deprived of life, liberty, or property." *Hollis v. W. Acad. Charter, Inc.*, 782 F. App'x 951, 957 (11th Cir. 2019). "Thus, an employee must show that he has a property interest in his job in order to state a procedural due process claim." *Id.* To have a property interest under Florida law, a plaintiff's employment cannot be "at will," but must be "subject to a contract, statute, or other set of rules giving rise to an expectation of continued employment[.]" *Id.* Defendant argues, among other things, that Plaintiff fails to allege a constitutionally protected property interest in his employment. (Doc. 23 at 28–30). Plaintiff fails to respond to this argument and discusses his due process claims only in passing in his response. (Doc. 30 at 2, 33, 35).

By failing to respond to Defendant's dismissal argument, Plaintiff has abandoned these claims. *See Gore v. Jacobs Eng'g Grp.*, 706 F. App'x 981, 986 (11th Cir. 2017) (affirming a court's finding that a claim was abandoned in part because the plaintiff "failed to address or respond in any way to [the

19

defendant's] arguments that the district court should dismiss his ADEA claim"); *Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) ("The appellants' failure to brief and argue this issue during the proceedings before the district court is grounds for finding that the issue has been abandoned."). In any event, Plaintiff fails to allege a property interest. He generally alleges he "has fundamental property and liberty interests in his job position with Defendant." (Doc. 9 ¶¶ 135, 142). But this is a legal conclusion. And his "allegations [do] not show that he was anything other than an at will employee[.]" *Hollis*, 782 F. App'x at 958. Thus, the Court dismisses Counts VI and VII.

Fourth, the Court addresses the state-law claims (Counts X, XI, and XII). Defendant argues that Florida's impact rule bars both negligence claims (Counts X and XI). Generally, the impact rule "requires that 'before a plaintiff can recover damages for emotional distress caused by the negligence of another, the emotional distress suffered must flow from physical injuries the plaintiff sustained in an impact.'" *Fla. Dep't of Corr. v. Abril*, 969 So. 2d 201, 206 (Fla. 2007) (citation omitted). The impact rule bars Plaintiff's negligence claims unless "(1) [he] sustained a physical impact from an external source, (2) the claim arises from a situation in which the 'impact' requirement is relaxed and [he] manifests a significant discernible physical injury or illness as a result of the emotional trauma, or (3) one of the narrow exceptions to the impact rule

applies rendering the rule inapplicable." *Pipino v. Delta Air Lines, Inc.*, 196 F. Supp. 3d 1306, 1315 (S.D. Fla. 2016).

Plaintiff does not argue that he is seeking anything other than damages for emotional distress in his negligence claims. He does not argue that he has alleged any physical impact. Nor does he argue that an exception to the impact rule applies. Instead, he asserts that his allegations, "while not overly specific, suggest potential physical manifestations of emotional distress sufficient to satisfy the impact rule's requirement of a 'significant discernible physical injury or illness.'" (Doc. 30 at 35). These allegations include that he was "physically and emotionally traumatized" and suffered "physical infirmities, specifically chest pains, potential heart attack, and extreme stress causing him to have significant weight loss all that required medical attention." (Doc. 9 ¶ 92).

Plaintiff's allegations fall well short. To start, there is no physical impact. *See Arditi v. Grove Isle Ass'n, Inc.*, 905 So. 2d 151, 153 (Fla. Dist. Ct. App. 2004) (holding that damages arising from a heart attack would survive the impact rule only if a physical impact caused the heart attack). Further, Plaintiff's alleged "physical infirmities" do not amount to a significant discernible physical injury. *See, e.g.*, *Elliott v. Elliott*, 58 So. 3d 878, 882 (Fla. Dist. Ct. App. 2011) (finding "headaches, diabetes, sleep apnea, stress,

insomnia, anxiety, loss of appetite, hair loss, and bowel trouble" are not discernable physical injuries). The Court dismisses Counts X and XI.

Defendant argues that Plaintiff has failed to state his final claim—IIED (Count XII). For this claim, Plaintiff must allege "(1) intentional or reckless conduct (2) that is outrageous and (3) causes the victim emotional distress (4) that is severe." *Gomez v. City of Doral*, No. 21-11093, 2022 WL 19201, at *7 (11th Cir. Jan. 3, 2022) (citing *Kim v. Jung Hyun Chang*, 249 So. 3d 1300, 1305 (Fla. Dist. Ct. App. 2018)). "To show outrageousness, the plaintiff must allege conduct that is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* (quoting *Metro. Life Ins. v. McCarson*, 467 So. 2d 277, 278–79 (Fla. 1985)).

Plaintiff's allegations fall short again. He alleges that a coworker yelled at him and called him derogatory names and his supervisor referred to him using a racial slur. He also alleges various ways that his employer treated him differently because of his age, his race, and the fact that he took medical leave. Some of this conduct, as alleged, is disgraceful. But outrageousness is a high bar. And Florida courts have held allegations of similar or worse workplace conduct insufficient. *See, e.g.*, *Williams v. Worldwide Flight SVCS., Inc.*, 877 So. 2d 869, 870 (Fla. Dist. Ct. App. 2004); *Lay v. Roux Lab'ys, Inc.*, 379 So. 2d 451, 452 (Fla. Dist. Ct. App. 1980). The Court dismiss Count XII.

Accordingly, it is now

**ORDERED:**

(1)  The Amended Complaint (Doc. 9) is **DISMISSED**.

(2)  **On or before April 17, 2025**, Plaintiff must file a second-amended complaint consistent with this Order.  **Failure to comply will result in dismissal and closure without further notice.**[4]

**DONE** and **ORDERED** in Fort Myers, Florida on April 10, 2025.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record

---

[4] Many deficiencies outlined above likely cannot be remedied by amendment.  That said, the Court will grant Plaintiff leave to amend his complaint to the extent that he can address the Court's other concerns.  The Court warns him, however, that he must take a more thoughtful approach next time.  In this briefing, Plaintiff—who is represented by counsel—once spanned 17 pages of argument without a single citation to authority.  (Doc. 30 at 9–25).  This is not a winning strategy.  Further deficiencies will result in dismissal with prejudice as to the remaining claims.